POOLE et al. v. CAGE et al.     (No. 7737.)

(Court of Civil Appeals of Texas. Galveston. May 8, 1919. Rehearing Denied June 5, 1919.)

1. MORTGAGES ⬤⟳16, 151(1)—FUTURE INDEBTEDNESS—SUBSEQUENT PURCHASERS OF MORTGAGED LAND.

A recorded mortgage to secure future indebtedness is valid, not only between the parties, but as to subsequent purchasers from the mortgagor, and, as to such subsequent purchasers, any advances made or indebtedness incurred in pursuance to the mortgage contract, whether before or after the subsequent sale or incumbrance, are protected by a prior and superior lien upon the property, for Acts 29th Leg. c. 138, as amended by Acts 33d Leg. (First Called Sess.) c. 27 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695), does not affect the validity of such a future indebtedness clause.

2. PUBLIC LANDS ⬤⟳178(2) — STATE FREE SCHOOL LANDS — CONVEYANCE BY APPLICANT.

Where proper application has been made for public free school land of the state and the land has been surveyed, the applicant has a potential interest in the land which he can mortgage or sell; the subsequent award to him inuring to benefit of his mortgagee or purchaser.

3. MORTGAGES ⬤⟳338 — FORECLOSURE—CONSTRUCTION OF PRAYER.

In action to enjoin sale by trustee under power conferred by deed of trust, prayer of answer for the "foreclosure of their said deed of trust lien as provided for in said deed of trust" held to authorize a foreclosure by the court, and not merely an order directing foreclosure by trustee.

4. PLEADING ⬤⟳34(6)—CONSTRUCTION—AFTER JUDGMENT.

Any doubt as to the proper construction of a prayer of answer will be solved in favor of the judgment.

Appeal from District Court, Harris County; L. B. Moody, Special Judge.

Suit by T. J. Poole and another against Elliott Cage and another. From judgment for defendants, plaintiffs appeal. Affirmed.

Gaines & Corbett and Krause & Wilson, all of Bay City, for appellants.

Elliott Cage, of Houston, for appellees.

PLEASANTS, C. J. This is a suit for injunction brought by appellants, T. J. Poole and T. J. Poole, Jr., against appellees, Elliott Cage and H. Masterson, to restrain the sale of a tract of 758 acres of land in Brazoria county, known as the C. J. Rogers survey, under power conferred by a deed of trust executed on August 15, 1908, by said Rogers to Elliott Cage, trustee for H. Masterson. This deed of trust, which was given to secure a note of even date therewith for the sum of $125, executed by C. J. Rogers and

---

payable to H. Masterson 90 days after date, contains the following recital:

"And whereas it is contemplated that said C. J. Rogers may hereafter become indebted unto said party of the third part in further sum or sums, which said indebtedness now accrued or to accrue in future, it is agreed shall all be payable at Houston, Tex., and bear interest at the rate of 10 per cent. per annum from date of accrual until paid, by whatever means the same shall accrue, and this conveyance is made for the security and enforcement of the payment of said present and future indebtedness."

This deed of trust was duly recorded in the mortgage records of Brazoria county on August 24, 1908. Thereafter Rogers became indebted to Masterson in various sums of money evidenced by notes and open accounts of various dates from the date of said deed of trust up to and including January 29, 1917.

On the 3d day of August, 1915, C. J. Rogers and wife executed a deed of trust upon this and several other tracts of land to George A. Byars to secure the payment of a note for $1,766 executed by Rogers and wife and payable to Tiry W. Horn. This note not having been paid at maturity, the deed of trust was foreclosed by a sale by the trustee in accordance with the terms of the instrument. The appellants became the purchasers at this sale and are the owners of the several tracts of land covered by said trust deed, including the tract upon which Masterson claims a lien to secure the indebtedness due him by Rogers.

Shortly after the sale of the land under the Byars deed of trust and its purchase by appellants, appellee Cage, at the request of Masterson, advertised the land for sale under the deed of trust given to secure Masterson's indebtedness, and this suit was then instituted by appellants.

The following sufficient statement of the substance of the pleadings is copied from appellants' brief:

"Appellants pleaded limitation against the items of indebtedness for which Masterson claimed a lien on the land, and also pleaded laches, delay, and neglect on the part of said Masterson in complying with the provisions of articles 5693, 5694, and 5695, Vernon's Sayles' Revised Civil Statutes of Texas (1914), and that said Masterson lost his right to assert any lien against the land described in said deed of trust.

"Appellants also asserted that appellees wholly failed to comply with the provision of the law relating to the extension of deeds of trust and the indebtedness secured thereby, and whatever lien may have been created in favor of Masterson by reason of original deed of trust was lost; and that the lien of the deed of trust in favor of Horn became prior and superior thereto; and that the foreclosure and sale under Horn's deed of trust was conclusive against all claims or liens of Masterson against said land.

"Appellants averred that, if Masterson was permitted to proceed with the foreclosure under his deed of trust, a cloud would be cast upon title of appellants. They also averred that at the time Rogers executed his said deed of trust for the benefit of Masterson on August 15, 1908, that Rogers at that date had not acquired from the state the lands conveyed in his said deed of trust; that the award of said lands to Rogers was made on March 18, 1910.

"Appellants asked the court for an injunction restraining the appellees from attempting to enforce the lien claimed by him under his said deed of trust, or the power of sale thereunder, and further that said deed of trust be declared void."

Appellees answered by demurrer and denial and admitted: That the renewal of the $125 note specifically set forth in the deed of trust dated August 15, 1908, was not placed of record prior to the date of the execution by Rogers and wife of the deed of trust to Horn, but averred that the said deed of trust contained a future indebtedness clause whereby all further sum or sums of money for which Rogers might thereafter become indebted to said Masterson should be secured by said deed of trust, and Masterson set up in his pleadings the following indebtedness claimed to fall under and be secured by the future indebtedness clause of said deed of trust, viz.: One note dated May 11, 1908, for $604.42, due 10 days after date; one note for $225, dated November 30, 1908, due date not stated; one note for $340, dated January 29, 1914, due 12 months after date, and which note was also secured by a lien on real property in Velasco, Tex., as well as 270 acres of land in the Murray survey in Brazoria county; one note for $600, dated February 25, 1915, due 4 months after date, which was secured also by deed of trust on ⅝ of 400 acres of land in S. F. Austin league, Lee county, Tex., and which was foreclosed, and a credit of $115.70 was credited on the latter note; one note for $100, dated September 21, 1915, due 6 months after date; one note for $700, dated May 18, 1916, due date not stated; one note for $400, dated June 7, 1916, due date not stated; one note for $825, dated August 26, 1916, due date not stated. That all of said notes bear 10 per cent. interest and provide for 10 per cent. on the amount thereof for attorney's fees, all of which said Masterson claimed to be secured under the future indebtedness clause in said deed of trust.

Masterson further claimed: That he purchased from one Thompson a judgment recovered by Thompson against Rogers and wife rendered in district court of Harris county, and paid for such judgment $2,077.97, and the same was transferred to him; said judgment being secured by a lien on the homestead of said Rogers and wife situated in Harris county; that on the 29th day of January, 1917, Rogers and Masterson had an account-

ing, and that Rogers on that day executed to Masterson his note for $7,811.09, bearing 10 per cent. interest, and providing for 10 per cent. attorney's fees on the amount, and due 90 days after date; and that said note, which incorporated all past indebtedness of Rogers to Masterson, was secured by the future indebtedness clause of said deed of trust dated August 15, 1908. Masterson prayed that their lien on the property be established as superior to any right of appellants, and further that Masterson and Cage, the trustees, be permitted to foreclose their deed of trust as provided for in said deed of trust for the full amount of indebtedness alleged by them, and for general relief; but there was no prayer for foreclosure by the court.

The trial in the court below without a jury resulted in a judgment in favor of Masterson, denying plaintiffs' prayer for an injunction and establishing and foreclosing a lien in favor of Masterson upon the land before described for various items of the indebtedness claimed by him against C. J. Rogers, aggregating the sum of $4,406; but denying any lien upon the land for the note for $125 dated August 15, 1908, the note for $604.42, dated May 11, 1908, and the note for $225, dated November 30, 1908, all of which were held to be barred, as to appellants, by limitation, and also denying any lien for the judgment for $2,077.97, which Masterson had purchased and which was secured by a lien upon another tract of land.

It was "further ordered, adjudged, and decreed that an order of sale issue, and that said property be sold thereunder for the satisfaction of the judgment, and that, in event that said property sells for more than enough to satisfy the amount for which the lien was foreclosed, then and in that event, the balance, if any, be paid over to the said T. J. Poole, Jr."

Under appropriate assignments of error, the appellants assail the judgment on the ground that, when the note for $125 mentioned in Masterson's deed of trust became barred, the deed of trust became invalid, notwithstanding its future indebtedness clause, because under the law as it existed at the time the deed of trust was given no lien could be created as against third parties by writing in the instrument a general clause giving a lien to secure future indebtedness.

As more fully stated in appellants' third proposition under the assignments presenting this question, their contention is:

"In order to create and preserve a valid lien against real property under the present laws of Texas, and which were in force at the time of the transactions between the parties to this suit, there must be in existence and of record in the county where the land is situated: (1) A written instrument creating the lien and in which there must be set forth the amount of indebtedness secured and the due date of said indebtedness; or (2) a written instrument executed and acknowledged by the makers of the indebtedness in which a former indebtedness must be stated as well as the due date thereof—so that all third persons dealing with said property may know from an inspection of the records what liens are standing against the property and the amount secured thereby and the date on which the indebtedness may mature and in the absence of such written instruments duly executed, acknowledged, and recorded, no liens other than statutory liens upon real estate can now be created or preserved."

[1] There is no merit in this contention. It has long been a well-established rule of decision in this state that a recorded mortgage, which recites that it is given to secure future indebtedness that in contemplation of the parties may be incurred by the mortgagor to the mortgagee is a valid mortgage, not only between the parties to the contract, but as to subsequent purchasers from the mortgagor. Any subsequent purchaser from a mortgagor must take notice of such contract or agreement as to future indebtedness, and any advances made or indebtedness incurred in pursuance to such contract, whether before or after the subsequent sale or incumbrance, are protected by a prior and superior lien upon the property. Freiberg v. Magale, 70 Tex. 116, 7 S. W. 684; Willis v. Sanger, 15 Tex. Civ. App. 655, 40 S. W. 230; Groos & Co. v. Chittim, 100 S. W. 1011; Tinkman v. Wright, 163 S. W. 618; Sprinkle Mercantile Co. v. Hause, 184 S. W. 737.

In support of their proposition above set out, appellants cite chapter 138, p. 334, of the Legislative Acts of 1905, and Acts of First Called Session of Thirty-Third Legislature 1913, c. 27, p. 39 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695). The first of these statutes provides, in effect, that the power of sale conferred by a mortgage or deed of trust cannot be enforced after the expiration of ten years from the maturity of the indebtedness secured by such instrument, and that the right to recover the superior title of a vendor in a deed in which a vendor's lien is reserved to secure the payment of the purchase money shall be barred after the expiration of ten years from the maturity of the debt, and further provides that any extension of the date of maturity of the debt for which a mortgage or trust deed is executed or a debt for the purchase money of land must be by an instrument in writing duly acknowledged and recorded. The act of 1913 amends the act of 1905 by reducing the period of limitation from ten to four years and fixes a period of limitation within which trust deeds may be foreclosed or suits brought for the recovery of land in cases in which the debts were barred at the time the statute was enacted.

We fail to see what bearing these statutes

have upon the question of the validity of a future indebtedness clause in a mortgage or deed of trust. Their sole purpose is to prohibit the sale of land under a trust deed or its recovery by a vendor after the debt for which the lien was created has become barred by limitation, and to provide that any renewal of the debt should be by written instrument duly acknowledged and recorded.

As we have before shown, no judgment was rendered in this case foreclosing a lien for any barred indebtedness, and no question of any renewal of the indebtedness is presented.

The second ground upon which appellants seek a reversal of the judgment is that the deed of trust is invalidated because at the time of its execution the land thereby conveyed was "a part of the public free school lands of the state of Texas, and had not at such date been awarded to C. J. Rogers, the award to the said Rogers having been made on March 18, 1910, and for that reason said deed of trust was wholly void, it being against the public policy of the state of Texas, for the free school lands of the state to be mortgaged, sold, or conveyed, prior to its segregation and award to prospective purchasers."

[2] The record shows that Rogers had made proper application for the land, and a survey had been made in accordance with the statute prior to the execution of the deed of trust. At the time the trust deed was executed, Rogers had done all that was required of him to acquire the land from the state. The land had been segregated from the public domain by the required survey, and Rogers unquestionably had a potential interest therein which he could mortgage or sell, and the subsequent award to him inured to the benefit of his vendee. Johnson v. Newman, 43 Tex. 628; Richardson v. Powell, 83 Tex. 590, 19 S. W. 262; Breen v. Morehead, 126 S. W. 655.

In the case last cited, which is directly in point, the court says:

"In our view, the pivotal question in the case is: Did the deed of October 21, 1885, from McKelligon to Breen, pass the title afterwards acquired by the grantor from the state by virtue of the patent issued on August 25, 1892? If it did, the judgment should be reversed; if it did not, then it must be affirmed. In determining this question, we deem it unnecessary to consider whether a conveyance made by a purchaser of public school lands under the act of April 12, 1883 (Laws 1883, c. 88), of an undivided interest of such title as he may have therein, before he has performed his obligations to the state, necessary to acquire title, is void as against public policy; but will pass the question with the observation that, while it may be the state, through its officers in dealing with the land, may wholly ignore such a purchaser and recognize only the contract of the original purchaser, it may not follow that, as between the original purchaser and the ven-

dee of an interest in the former's inchoate title, such a conveyance is void as against public policy, or upon any other ground. As the law does not favor restrictions upon the alienation of such title, whether complete or inchoate, as one may have in property, and inasmuch as no such restrictions appear in the act under which Rogers purchased the land in controversy, we will assume for the purpose of this case that the sales by Rogers, the original purchaser, to McKelligon of an interest in his title, and of the latter to Breen, were, as between the parties, good as against any principle of public policy; and that their effect was to pass from their respective vendors, and vest in their several vendees, whatever title they may have had in the premises.".

By his last assignment of error appellant complains of that portion of the judgment foreclosing the lien and ordering the land sold to satisfy the indebtedness on the ground that there was no pleading authorizing such judgment.

The prayer of the answer is as follows:

"Premises considered, defendants pray that their lien on said property be established to the full amount thereof as being prior and superior to any right, title, or interest that the said plaintiffs or either of them have in, to, or against said property and the defendants' right in the premises be declared subject and subordinate to plaintiffs' said lien on or title to said property, and that defendants be permitted to foreclose their said deed of trust lien as provided for in said deed of trust, for the full amount of indebtedness shown to be due by and between the said Rogers and the said Masterson at this date. Defendants pray that all relief sought by plaintiffs be denied. Defendants pray for all costs in this behalf incurred, for general and special relief, and as in duty bound will ever pray."

Appellants' contention is predicated upon the fact that defendants' prayer is for the "foreclosure of their said deed of trust lien as provided for in said deed of trust," and that this prayer, notwithstanding the further prayer for "general and special relief," only authorizes the court to direct a foreclosure of the lien by a sale by the trustee, and does not authorize a foreclosure by the court and the issuance of an order of sale and a sale thereunder.

[3] We do not think the defendants' prayer should be so construed. If appellants' construction of the prayer is correct, it would only result in a reformation of the judgment, and we can see no possible benefit to appellants to have the land sold by the trustee instead of having it sold under an order of sale issued from the court.

[4] In these circumstances we deem it proper to solve any doubt there may be as to the proper construction of the prayer in favor of the judgment.

We are of opinion that none of appellants' assignments of error can be sustained. It follows that the judgment is affirmed.

Affirmed.